James C. Shah
Nathan C. Zipperian
Shepherd, Finkelman, Miller & Shah, LLC
475 White Horse Pike
Collingswood, New Jersey 08107-1909
Telephone: (856) 858-1770
Facsimile: (856) 858-7012
jshah@sfmslaw.com

Additional Counsel on Signature Page

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTINA JOHNSON, On Behalf of Herself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MENU FOODS, INC., and DOES 1 through 99, <br><br> Defendants. | Civil Action No. 07CV1610(NLH) <br><br> Class Action Complaint <br><br> JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff, Christina Johnson ("Plaintiff" of "Johnson"), on behalf of herself and all others similarly situated, by her attorneys, and for her causes of action against Defendant, Menu Foods, Inc. ("MFI," "Defendant" or the "Company"), alleges upon information and belief, except as to her own actions and as to facts that are a matter of public record, as follows:

### NATURE OF ACTION

1. Plaintiff brings this class action on behalf of herself and all others similarly

situated to obtain damages, restitution, and injunctive relief.[1]

2. MFI manufactures pet food (dog food and cat food) and distributes its products throughout the United States.

3. On March 16, 2007, MFI, through its parent corporation, Menu Foods Income Fund ("MFIF"), first announced, in understated language, a "precautionary" recall of certain of the dog and cat food it marketed between December 3, 2006 and March 6, 2007.

4. In fact, although the recall notice sought to minimize the seriousness of the problem, at the time that MFI implemented the limited recall it knew that the pet food at issue (1) had killed and seriously injured numerous cats and dogs; and (2) frequently caused dogs and cats to experience renal failure. Nevertheless, MFI continued to manufacture, market and distribute the pet food long after it became aware of the seriousness of the problem and prior to alerting the public and the United States Food and Drug Administration ("FDA").

5. This action is brought to remedy Defendant's actions. Plaintiff and the Class seek damages for MFI's violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56: 8-1 *et seq.* ("CFA"), as well as its negligent conduct, breach of warranty and outrageous and wilful acts in connection with the Company's manufacture, sale and distribution of tainted pet food.

### PARTIES

6. Plaintiff is, and at all times relevant to this action has been, a resident of Tampa, Florida.

---

[1] As set forth below, Plaintiff seeks to represent a consumer class and physical injury class, which, unless otherwise indicated, are referred to collectively as "Class" herein.

7. Defendant, MFI, is a corporation formed under the laws of New Jersey, with its headquarters and principal place of business located in this district at 9130 Griffith Morgan Lane, Pennsauken, New Jersey 08110. MFI maintains two principal manufacturing facilities in the United States -- in Pennsauken, New Jersey and Emporia, Kansas.

8. MFI is a wholly-owned subsidiary of MFIF, a Canadian corporation with its headquarters and principal place of business at 8 Falconer Drive, Streetsville, Ontario. MFIF and MFI hold themselves out as "the leading North American private-label/contract manufacturer of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers and other retail and wholesale outlets." The companies represent that they sold over 1 billion containers or pet food, primarily cans and pouches, in 2006.

9. The true names and capacities (whether individual, corporate, associate, or otherwise) of the Defendants identified as Does 1 through 99 are presently unknown to Plaintiff. Plaintiff is, therefore, suing these Defendants by the fictitious "Does" name. Plaintiff is informed and believes and alleges that each of the Defendants fictitiously named in this Complaint as "Doe" is legally responsible in some actionable manner for the conduct described in the Complaint, and thereby caused the injuries and damages to Plaintiff and other Class members as alleged in this Complaint. Plaintiff will seek leave of Court to amend this Complaint to state the true names and capacities of these fictitiously-named Defendants when their identities have been ascertained.

### JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of

interest and costs, and this is a class action in which certain of the Class members are citizens of states other than New Jersey, where Defendant resides.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant does business throughout this district, is headquartered in this district, manufactures the pet food at issue in this district, and many of the acts complained of took place within this district. In addition, many members of the proposed Class reside in this district.

## FACTUAL BACKGROUND

12. This class action is brought on behalf of all persons (1) whose dogs or cats were injured or killed as the result of ingesting tainted pet food manufactured by Defendant and (2) who purchased the tainted pet food and were not reimbursed for their purchase(s).

13. Between at least December 3, 2006 and March 6, 2007, MFI produced defective pet food at its United States plants, including the manufacturing facility in Pennsauken, New Jersey. These products were manufactured, on a contract basis, for private label pet food companies, supermarket chains, and other sellers. The defective products include the following brands (collectively the "Pet Food Products"):

**Recalled Cat Food:**

America's Choice; Preferred Pets; Authority; Best Choice; Companion; Compliments; Demoulas Market Basket; Eukanuba; Fine Feline Cat; Food Lion; Foodtown; Giant Companion; Hannaford; Hill Country Fare; Hy-Vee; Iams; Laura Lynn; Li'l Red; Loving Meals; Meijer's Main Choice; Nutriplan; Nutro Max Gourmet Classics; Nutro Natural Choice; Paws; Pet Pride; President's Choice; Price Chopper; Priority US; Save-A-Lot Special Blend; Schnucks; Science Diet Feline Savory Cuts Cans; Sophisticat; Special Kitty Canada; Special Kitty US; Springfield

Prize; Sprout; Stop & Shop Companion; Tops Companion; Wegmans; Weis Total Pet; Western Family US; White Rose; and Winn Dixie.

**Recalled Dog Food:**

America's Choice; Preferred Pets; Authority; Award; Best Choice; Big Bet; Big Red; Bloom; Cadillac; Companion; Demoulas Market Basket; Eukanuba; Food Lion; Giant Companion; Great Choice; Hannaford; Hill Country Fare; Hy-Vee; Iams; Laura Lynn; Loving Meals; Meijer's Main Choice; Mighty Dog Pouch; Mixables; Nutriplan; Nutro Max; Nutro Natural Choice; Nutro Ultra; Nutro; Ol' Roy Canada; Ol' Roy US; Paws; Pet Essentials; Pet Pride - Good n Meaty; President's Choice; Price Chopper; Priority Canada; Priority US; Publix; Roche Brothers; Save-A-Lot Choice Morsels; Schnucks; Shep Dog; Springfield Prize; Sprout; Stater Brothers; Stop & Shop Companion; Tops Companion; Wegmans Bruiser; Weis Total Pet; Western Family US; White Rose; Winn Dixie; and Your Pet.

14. Between December 3, 2006 and March 6, 2007, MFI became aware that numerous cats and dogs that had ingested the Pet Food Products had developed kidney failure. As a result, MFI began performing tests on live animals, pursuant to which, at least nine of the test cats died after eating the Pet Food Products. Nevertheless, although MFI was aware of the significant risks associated with the consumption of the Pet Food Products, including kidney failure and death, the Company continued to manufacture and distribute the Pet Food Products to the unsuspecting public.

15. Apparently concerned about investor reaction to the adverse news, MFI knowingly and purposefully delayed announcing its knowledge regarding the tainted and dangerous Pet Food Products to the public and to the FDA, in blatant disregard for the health and

safety of the animals which were consuming the Pet Food Products.

16. On March 16, 2007, when MFI issued its initial press release announcing a limited recall, the Company claimed to be aware of at least 14 instances of animal deaths resulting from consumption of the Pet Food Products. The number of killed and injured dogs and cats far exceeded the number stated by MFI at that time and, upon information and belief, MFI was aware that the problem was much more severe than it represented to the public.

17. In the days after the March 16, 2007 initial "precautionary recall," further information about the source of the contamination was made public, including the disclosure on March 23, 2007 that Aminopterin, a toxin used as a rat poison, had been identified in the Pet Food Products, and the subsequent disclosure that a chemical used in the manufacture of plastics was, likewise, found in the Pet Food Products.

18. Thereafter, MFI expanded the "precautionary recall" to include all of the Pet Food Products, regardless of date of manufacture.

### PLAINTIFF'S EXPERIENCE

19. Plaintiff owned a three (3) year old Torti Persian breed cat whose diet included, in significant part, pouches of Iams cat food manufactured by MFI and purchased by Plaintiff.

20. On February 14, 2007, Plaintiff's cat had to be euthanized as a result of chronic renal failure caused by ingesting the Iams cat food manufactured by MFI.

21. Plaintiff has satisfied all of the obligations and the preconditions necessary to qualify for warranty coverage.

### CLASS ACTION ALLEGATIONS

22. Plaintiff requests that this Court certify the following Classes pursuant to Rule 23

of the Federal Rules of Civil Procedure:

### The Consumer Class

All persons who purchased the Pet Food Products.

### The Physical Injury Class

All persons who purchased the Pet Food Products and whose pets suffered injury or death as a result of consuming the Pet Food Products.

Excluded from the Class definitions is Defendant, its officers, directors, employees, and the Court to which this matter is assigned. Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveals that the Class definitions should be expanded or otherwise modified.

23.     This action is brought and may properly be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, typicality, adequacy, predominance and/or superiority requirements of that Rule.

24.     Numerosity. On information and belief, the members of the Class number in at least the thousands. As a result, the Class is so numerous that joinder of all members in a single action is impracticable. The members of the Class should be readily identifiable. The disposition of these claims will provide substantial benefits to the Class.

25.     Commonality/Predominance. There is a well-defined community of interest and common questions of law and fact which predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of members of the Class, include, but are not limited to the following:

    a.     Whether the Pet Food Products were defective;

    b.     Whether Defendant continued to market and distribute the Pet Food

Products after becoming aware of the defects in the Pet Food Products;

c. Whether Defendant so mishandled the recall, and failed to provide a reasonable opportunity as to make its benefits illusory;

d. Whether Defendant failed to disclose to Plaintiff and members of the Class that the Pet Food Products were defective and unreasonably dangerous in a timely fashion;

e. Whether Defendant's conduct caused the injuries and deaths of Class members' pets;

f. Whether Defendant was negligent;

g. Whether Defendant is strictly liable for its conduct;

h. Whether Defendant breached the implied warranty of merchantability;

i. Whether Defendant's conduct violated the CFA;

j. Whether Defendant was unjustly enriched; and

k. Whether, as a result of Defendant's conduct, Class members are entitled to damages, restitution, equitable and other relief, and the amount and nature of such relief.

26. Typicality. The representative Plaintiff's claims are typical of the claims of the Class, because Plaintiff and all members of the Class were injured by the same wrongful practices in which Defendant engaged and are based on the same legal theories. The only difference may be the amount of damages sustained by each member of the Class, which can be determined readily and does not bar class certification.

27. Adequacy of Representation. Plaintiff will fairly and adequately protect and pursue the interests of the members of the Class. Plaintiff understands the nature of the claims herein and her role in these proceedings, and will vigorously represent the interests of the Class. Plaintiff has retained class counsel who are experienced and qualified in prosecuting class

actions and other forms of complex litigation. Neither Plaintiff nor her attorneys have interests which are contrary to or conflict with those of the Class.

28. <u>Superiority/Manageability</u>. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each member resulting from Defendant's wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual members of the Class prosecuting separate claims is remote and, even if every person could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Class do not have significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Class would be proper.

29. Certification of such a Class under the laws of New Jersey is appropriate because:

    (a)    New Jersey has a significant interest in governing the claims asserted herein;

    (b)    Defendant is a New Jersey corporation;

    (c)    Defendant maintains its principal place of business and executive offices in New Jersey;

(d)     Defendant manufactured a significant amount of the defective Pet Food Products in New Jersey;

(e)     Many of the acts and omissions giving rise to Plaintiff's claims arise in, and emanated from, New Jersey; and

(f)     A significant number of Class members reside in New Jersey.

## COUNT I
### (Violations of New Jersey Consumer Fraud Act (N.J.S.A. § 56:8-1 *et seq.*))

30. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

31. Plaintiff, other members of the Class, and Defendant are "persons" within the meaning of the CFA.

32. Plaintiff and other members of the Class are "consumers" within the meaning of the CFA.

33. At all relevant times material hereto, Defendant conducted trade and commerce in New Jersey, within the meaning of the CFA.

34. The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

35. The practices of Defendant violate the CFA for, *inter alia*, one or more of the following reasons:

     a.     Defendant concealed from Plaintiff and other members of the Class the material fact that the Pet Food Products were not safe for consumption by dogs and cats;

     b.     Defendant, even after it knew or should have known that the Pet Food Products were causing serious injury and death to dogs and cats, continued to sell and introduce the Pet Food Products into the stream of commerce;

   c. Defendant made material misrepresentations to Plaintiff and the Class regarding the Pet Food Products; and

   d. Defendant engaged in unconscionable commercial practices in making affirmative misrepresentation, and failing to disclose material information, about the Pet Food Products.

36. Defendant consciously omitted material facts from Plaintiff and other members of the Class with respect to the serious risk posed by the Pet Food Products.

37. Defendant's unconscionable conduct described herein included the misrepresentation, omission and concealment of material facts concerning the Pet Food Products.

38. Defendant intended that Plaintiff and the other members of the Class rely on its misrepresentations and omissions, so that Plaintiff and other Class members would purchase the Pet Food Products.

39. Had Defendant disclosed all material information regarding the Pet Food Products to Plaintiff and other members of the Class, they would not have purchased the Pet Food Products.

40. The foregoing acts, omissions and practices proximately caused Plaintiff and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, the injuries and deaths of the dogs and cats, resulting and accompanying veterinary treatment expenses and related costs, pet replacement costs, costs of the Pet Food Products, and such other and further damages as are identified over the course of this action, and Plaintiff and the Class is entitled to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

## COUNT II
### (Negligence)

41. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

42. MFI designed, distributed and manufactured the Pet Food Products.

43. Plaintiff and the Class were the known, obvious, and intended users of the Pet Food Products.

44. MFI owed to Plaintiff and the Class a duty to design, manufacture, and distribute products that were safe for their reasonable and intended use, (*i.e.*, consumption by dogs and cats owned by Plaintiff and the Class).

45. Plaintiff and the Class used the Pet Food Products in a manner consistent with the understanding, intention and direction of Defendant, (*i.e.*, as food for dogs and cats).

46. By the actions and conduct described in this Complaint, and by placing tainted Pet Food Products into the course of commerce as described in this Complaint, Defendant breached its duties to Plaintiff and the Class.

47. Defendant's negligence proximately caused damages to Plaintiff and the Class, including the injuries and deaths to the dogs and cats of Plaintiff and the Class, resulting and accompanying veterinary treatment expenses and related costs, pet replacement costs, costs of the Pet Food Product, and such other and further damages as are identified over the course of this action.

## COUNT III
### (Strict Tort Liability)

48. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

49. Defendant placed the defective Pet Food Products into the stream of commerce.

50. At the time that Defendant placed the Pet Food Products into the stream of commerce, it knew or should have known that the Pet Food Products were defective.

51. As a result of the introduction of the defective Pet Food Products into the stream of commerce by Defendant, Plaintiff and other Class members purchased the defective Pet Food Products.

52. As the result of the purchase by Plaintiff and the Class of the defective Pet Food Products, Plaintiff and the Class suffered damages, including the injuries and deaths to the dogs and cats of Plaintiff and the Class, resulting and accompanying veterinary treatment expenses and related costs, pet replacement costs, costs of the Pet Food Products, and such other and further damages as are identified over the course of this action.

53. Plaintiff has performed each and every duty required of her under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct.

54. As result of Defendant's breach of express warranties, Plaintiff and the other members of the Class have suffered damages.

## COUNT IV
### (Breach of Implied Warranty of Merchantability)

55. Plaintiff repeats and realleges the allegations of the preceding paragraph as if fully

set forth herein.

56. Defendant's Pet Food Products are "goods" pursuant to N.J.S.A. § 12A:2-105(1) and Defendant is a "merchant" pursuant to N.J.S.A. §12A:2-104(1).

57. Defendant's implied warranty of merchantability accompanied each sale of its Pet Food Products to members of the Class. N.J.S.A. § 12A:2-314(1).

58. The defects inherent in Defendant's Pet Food Products rendered the goods unsafe for consumption and, thus, unfit for the ordinary purposes for which such goods are used.

59. Through this conduct, Defendant has breached its implied warranty of merchantability and is liable to members of the Class.

## COUNT V
### (Unjust Enrichment)

60. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

61. As a direct and proximate result of Defendant's misconduct as set forth above, Defendant has been unjustly enriched.

62. Specifically, Defendant's misrepresentations, omissions, suppression and/or concealment of material facts in connection with the advertising, marketing, promotion and sale of the Pet Food Products has resulted in Defendant's wrongful receipt of profits. Accordingly, Defendant will be unjustly enriched unless ordered to disgorge those profits for the benefit of Plaintiff and other members of the Class.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for an order:

    a.    Declaring that this action is maintainable as a class action, certifying the Class and appointing Plaintiff as the representative of the Class and her attorneys as class counsel for the Class;

    b.    Awarding Plaintiff and the Class members compensatory damages as a result of the wrongs alleged herein;

    c.    Awarding Plaintiff and the Class members pre-judgment and post-judgment interest as a result of the wrongs complained of herein;

    d.    Awarding Plaintiff and the Class members treble damages under the CFA;

    e.    Awarding Plaintiff and the Class members their costs and expenses in this litigation, including reasonable attorneys' fees and expert fees and other costs;

    f.    Enjoining Defendant from engaging in the conduct described herein;

    g.    Requiring Defendant to disgorge the revenues earned through the sale of the Pet Food Products;

    h.    Awarding Plaintiff and the Class punitive damages; and

    i.    Awarding Plaintiff and the members of the Class such other and further relief as may be just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all issues.

Dated: April 5, 2007      By:    s/ James C. Shah
James C. Shah
Nathan C. Zipperian
Shepherd, Finkelman, Miller & Shah, LLC
475 White Horse Pike
Collingswood, New Jersey 08107-1909
Telephone: (856) 858-1770
Facsimile: (856) 858-7012

Scott R. Shepherd
Shepherd, Finkelman, Miller & Shah, LLC
35 East State Street
Media, Pennsylvania 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883

Lawrence E. Feldman
William Angle
Lawrence E. Feldman & Associates, LLP
432 Tulpehocken Avenue
Elkins Park, PA 19027
Telephone: (215) 885-3302
Facsimile: (215) 885-3303